

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

08-20442-CR-MORENO / TORRES
Case No.

18 U.S.C. § 371
18 U.S.C. § 1349
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 2
31 U.S.C. § 5324(a)(3)
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

JUAN CARLOS CASTANEDA,
DILCIA MARINEZ,
and
LUIS FRIAS,

Defendants.

_____/



FILED by _____ D.C.

MAY 2 2 2008

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times relevant to this Indictment:

1.     The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.     "Part B" of the Medicare Program paid Medicare providers and suppliers for covered goods and services,   including  medically  necessary  Human  Immunodeficiency  Virus  ("HIV")

infusion therapy, that were provided and ordered by physicians, clinics, and other qualified health care providers. Medicare Part B for HIV infusion therapy was administered in Florida by First Coast Service Options, a company that contracted with CMS to receive, adjudicate, process, and pay certain Part B claims, including HIV infusion therapy claims.

4.    Payments under the Medicare Program were often made directly to a provider of the goods or services, rather than to the beneficiary. This occurred when the provider accepted assignment of the right to payment from the beneficiary. In that case, the provider submitted the claim to Medicare for payment, either directly or through a billing company.

5.    Physicians, clinics, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider who was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare information number, the services that had been performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who had ordered the services.

6.    G&S Medical Centers Inc. ("G&S Medical") was a Florida corporation, purportedly doing business at 7303 W. Flagler Street, Miami, Florida. G&S Medical was a medical clinic that purported to specialize in treating patients with HIV by providing infusion therapy. From in or around May 2003 through in or around January 2004, approximately $14 million in claims were submitted to the Medicare program for HIV infusion services allegedly rendered at G&S Medical.

7.    Defendant **JUAN CARLOS CASTANEDA**, a resident of Miami-Dade County, Florida, was an owner of G&S Medical.

8.    Defendant **DILCIA MARINEZ**, a resident of Miami-Dade County, Florida, was an administrator at G&S Medical and was listed in the official corporate records as a president and director of G&S Medical.

2

9.    Defendant **LUIS FRIAS**, a resident of Miami-Dade County, Florida, was listed in the official corporate records as the registered agent of G&S Medical.

## COUNT 1
### Conspiracy to Defraud the United States, to Cause the Submission of False Claims, and to Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1.    Paragraphs 1 through 9 of the General Allegations section of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2.    From in or around May 2003, through in or around January 2004, the exact dates being unknown to the Grand Jury, at Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**JUAN CARLOS CASTANEDA,
DILCIA MARINEZ, and
LUIS FRIAS,**

and others, known and unknown to the Grand Jury, did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

a.    to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program;

b.    to make and present claims upon and against the United States Department of Health and Human Services, a department and agency of the United States, for purportedly medically necessary HIV infusion therapy medications, knowing such claims to be false, fictitious, and fraudulent, in violation of Title 18, United States Code, Section 287;

c.    to knowingly and willfully offer and pay any remuneration, including cash kickbacks

3

and bribes, directly and indirectly, overtly and covertly, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Medicare, and to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, service, and item for which payment may be made in whole and in part by Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2).

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for defendants **JUAN CARLOS CASTANEDA, DILCIA MARINEZ, LUIS FRIAS** and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent claims to Medicare; (b) offering and paying kickbacks and bribes to Medicare beneficiaries for the purpose of such beneficiaries arranging for the use of their Medicare beneficiary numbers by the conspirators as the bases of claims filed for HIV infusion therapy; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, the payment of kickbacks, and the true owners of G & S Medical; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

## MANNER AND MEANS

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

4.      **LUIS FRIAS** would incorporate G&S Medical in the State of Florida and list himself as president and registered agent in corporate records filed with the State of Florida. **DILCIA MARINEZ** would replace **FRIAS** as president and director of G&S Medical and **FRIAS** would remain as the registered agent for G&S Medical.

5.      **JUAN CARLOS CASTANEDA, DILCIA MARINEZ,** and **LUIS FRIAS** would retain physicians and physicians' assistants to work at G&S Medical  to make it appear that G&S

4

Medical was a legitimate HIV infusion clinic providing bona-fide therapy.

6.    **JUAN CARLOS CASTANEDA, DILCIA MARINEZ,** and **LUIS FRIAS** would hire a co-conspirator physician's assistant for the purpose of providing training to physicians in how to make it appear that legitimate and appropriate medical services were being provided at the clinic, as well as overseeing the documentation of services to make it appear that the services were actually rendered and medically necessary.

7.    **JUAN CARLOS CASTANEDA, DILCIA MARINEZ, LUIS FRIAS,** and their co-conspirators, known and unknown to the Grand Jury, would cause the payment of cash kickbacks to Medicare beneficiaries in exchange for the patients signing documents at G&S Medical stating that they had received the treatments that were billed to Medicare, when, among other things, such treatments were not provided and were not medically necessary.

8.    **JUAN CARLOS CASTANEDA, DILCIA MARINEZ,** and **LUIS FRIAS**, and their co-conspirators, known and unknown to the Grand Jury, would cause the submission of approximately $14 million of false and fraudulent claims to Medicare under the provider numbers of G&S Medical, for services that were never provided and services that were not medically necessary.

9.    After the payments from Medicare were deposited into G&S Medical's bank accounts, **JUAN CARLOS CASTANEDA, DILCIA MARINEZ,** and **LUIS FRIAS** would transfer approximately $4 million to sham "marketing" and "management" companies owned and controlled by their co-conspirators.

10.    After the payments from Medicare were deposited into the G&S Medical bank accounts, **JUAN CARLOS CASTANEDA, DILCIA MARINEZ,** and **LUIS FRIAS** would cause the  transfer of approximately $480,000 to the co-conspirator physician's assistant and to entities owned and controlled by the co-conspirator physician's assistant.

11.    After the payments from Medicare were deposited into G&S Medical's bank accounts, **JUAN CARLOS CASTANEDA, DILCIA MARINEZ,** and **LUIS FRIAS** would cause

the transfer of approximately $1.8 million to companies owned directly or indirectly by **CASTANEDA**, and approximately $800,000 to **FRIAS** and **MARINEZ** directly and to companies registered in the names of **FRIAS** and **MARINEZ**.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects and purpose, at least one of the conspirators committed, or caused to be committed, at Miami-Dade County, in the Southern District of Florida, the following overt acts, among others:

1.   On or about May 29, 2003, **LUIS FRIAS** and his co-conspirators caused a check in the approximate amount of $72,335, drawn on a G&S Medical bank account at First Union Bank, made payable to "J Marketing," a sham management company controlled by co-conspirators, to be negotiated at Maytemar Corporation, a/k/a La Bamba Check Cashing.

2.   On or about May 29, 2003, **DILCIA MARINEZ** and her co-conspirators caused a check in the approximate amount of $61,350, drawn on a G&S Medical bank account at First Union Bank, made payable to "BBB Management," a sham management company controlled by co-conspirators, to be negotiated at Maytemar Corporation, a/k/a La Bamba Check Cashing.

3.   On or about June 4, 2003, **LUIS FRIAS** and **DILCIA MARINEZ** caused to be tendered a claim to the Medicare program for 300 units of Rho(D) immune globulin allegedly provided to Medicare beneficiary R.R.

4.   On or about June 5, 2003, **LUIS FRIAS** and **DILCIA MARINEZ** caused to be tendered a claim to the Medicare program for 300 units of Rho(D) immune globulin allegedly provided to Medicare beneficiary C.C.

5.   On or about June 6, 2003, **LUIS FRIAS** and **DILCIA MARINEZ** caused to be tendered a claim to the Medicare program for 300 units of Rho(D) immune globulin allegedly provided to Medicare beneficiary J.R.

6.   On or about August 25, 2003, **JUAN CARLOS CASTANEDA** and **DILCIA MARINEZ** caused a check in the approximate amount of $9,975, drawn on a G&S Medical bank

account at First Union Bank, made payable to Medical Management Support Group to be cashed at Gallart Investment, Inc., a Florida check-cashing corporation controlled by **JUAN CARLOS CASTANEDA** and his wife.

7.   On or about August 26, 2003, **JUAN CARLOS CASTANEDA** and **DILCIA MARINEZ** caused a check in the approximate amount of $9,975, drawn on a G&S Medical bank account at First Union Bank, made payable to Professional Laboratory Systems, Inc., to be cashed at Gallart Investment, Inc., a Florida check-cashing corporation controlled by **JUAN CARLOS CASTANEDA** and his wife.

8.   On or about August 26, 2003, **JUAN CARLOS CASTANEDA** and **DILCIA MARINEZ** caused a check in the approximate amount of $9,975, drawn on a G&S Medical bank account at First Union Bank, made payable to Medical Scripts, to be cashed at Gallart Investment, Inc., a Florida check-cashing corporation controlled by **JUAN CARLOS CASTANEDA** and his wife.

9.   On or about August 26, 2003, **LUIS FRIAS** and **DILCIA MARINEZ** caused to be tendered a claim to the Medicare program for 300 units of Rho(D) immune globulin allegedly provided to Medicare beneficiary H.G.

10.   On or about November 6, 2003, **JUAN CARLOS CASTANEDA, DILCIA MARINEZ**, and their co-conspirators caused a check in the approximate amount of $100,000, drawn on a G&S Medical account at Wachovia Bank, made payable to "Waterfront Vacation Rentals," to be negotiated into a Waterfront Vacation Rentals account at Commerce Bank.

11.   On or about November 19, 2003, **JUAN CARLOS CASTANEDA, DILCIA MARINEZ**, and their co-conspirators caused a check in the approximate amount of $100,000, drawn on a G&S Medical account at Wachovia Bank, made payable to "Waterfront Vacation Rentals," to be deposited into a Waterfront Vacation Rentals account at Commerce Bank.

12.   On or about December 15, 2003, **LUIS FRIAS** and **DILCIA MARINEZ** caused to be tendered a claim to the Medicare program for 200 units of Rho(D) immune globulin allegedly

7

provided to Medicare beneficiary R.H.

13.     On or about January 5, 2004, **LUIS FRIAS, DILCIA MARINEZ**, and their co-conspirators caused a check in the approximate amount of $52,344, drawn on a G&S Medical account at Wachovia Bank, made payable to "L.G.S. Consultant Firm," to be deposited into a L.G.S. Consultant Firm account at Bank Atlantic.

14.     On or about January 6, 2004, **LUIS FRIAS, DILCIA MARINEZ**, and their co-conspirators caused a check in the approximate amount of $51,189, drawn on a G&S Medical account at Wachovia Bank, made payable to "Dima Management Company," to be deposited into a Dima Management Company account at Union Planters Bank.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1.     Paragraphs 1 through 9 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     From in or around May 2003, through in or around January 2004, the exact dates being unknown to the Grand Jury, at Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**JUAN CARLOS CASTANEDA,**
**DILCIA MARINEZ,**
**and**
**LUIS FRIAS,**

did knowingly and willfully combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

8

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for **JUAN CARLOS CASTANEDA, DILCIA MARINEZ, LUIS FRIAS,** and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent claims to Medicare; (b) offering and paying kickbacks and bribes to Medicare beneficiaries for the purpose of such beneficiaries arranging for the use of their Medicare beneficiary numbers by the conspirators as the bases of claims filed for HIV infusion therapy; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds from the fraud, the payment of kickbacks, and the true owners of G & S; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

## MANNER AND MEANS

4.      The allegations in paragraphs 4 through 11 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated as though fully set forth herein as a description of the Manner and Means of this conspiracy.

All in violation of Title 18, United States Code, Section 1349.

### COUNT 3
### Money Laundering Conspiracy
### (18 U.S.C. § 1956(h))

From in or around May 2003, through in or around January 2004, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**JUAN CARLOS CASTANEDA,**
**DILCIA MARINEZ,**
**and**
**LUIS FRIAS,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, and agree with each other and with other persons, known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and 1957, to wit:

a.      to knowingly conduct a financial transaction affecting interstate and foreign

commerce, which in fact involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

b.      to knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNTS 4–5
### Money Laundering
### (18 U.S.C. § 1957)

On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**DILCIA MARINEZ**
**and**
**LUIS FRIAS,**

knowingly engaged in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity:

| Count | Defendant(s) | On or about date | Financial Transaction |
|-------|--------------|------------------|-----------------------|
| 4 | LUIS FRIAS | 5/29/2003 | Check in the approximate amount of $72,335, drawn on a G&S Medical bank account at First Union Bank, made payable to "J Marketing," negotiated at Maytemar Corporation, doing business as La Bamba Check Cashing. |
| 5 | DILCIA MARINEZ | 5/29/2003 | Check in the approximate amount of $61,350, drawn on a G&S Medical bank account at First Union Bank, made payable to "BBB Management," deposited into a BBB Management account at Intercredit Bank. |

In violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS 6–9
### Money Laundering
### (18 U.S.C. § 1956(a)(1)(B)(i) and 2)

On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**JUAN CARLOS CASTANEDA,**
**DILCIA MARINEZ,**
and
**LUIS FRIAS,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which in fact involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity:

| Count | Defendant(s) | On or about date | Financial Transaction |
|-------|--------------|------------------|------------------------|
| 6 | JUAN CARLOS CASTANEDA<br><br>DILCIA MARINEZ | 11/6/2003 | Check in the approximate amount of $100,000, drawn on a G&S Medical account at Wachovia Bank, made payable to "Waterfront Vacation Rentals," deposited into Waterfront Vacation Rentals account at Commerce Bank |
| 7 | JUAN CARLOS CASTANEDA<br><br>DILCIA MARINEZ | 11/19/2003 | Check in the approximate amount of $100,000, drawn on a G&S Medical bank account at Wachovia Bank, made payable to "Waterfront Vacation Rentals," deposited into Waterfront Vacation Rentals account at Commerce Bank |
| 8 | LUIS FRIAS<br><br>DILCIA MARINEZ | 1/5/2004 | Check in the approximate amount of $52,344, drawn on a G&S Medical bank account at Wachovia Bank, made payable to "L.G.S. Consultant Firm," deposited into an L.G.S. Consultant Firm bank account at Bank Atlantic |
| 9 | LUIS FRIAS<br><br>DILCIA MARINEZ | 1/6/2004 | Check in the approximate amount of $51,189, drawn on a G&S Medical bank account at Wachovia Bank, made payable to "Dima Management Company," deposited into a Dima Management Company bank account at Union Planters Bank |

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNTS 10-12
### Structuring
### (31 U.S.C. § 5324(a)(3) and 18 U.S.C. § 2)

On or about the dates specified as to each count below, in Miami-Dade County, in the

Southern District of Florida, and elsewhere, the defendants,

### JUAN CARLOS CASTANEDA and
### DILCIA MARINEZ,

did knowingly and willfully and for the purpose of evading the reporting requirements of Title 31,

United States Code, Section 5313(a) and the regulations promulgated thereunder, structure and assist

in structuring, attempt to structure, and assist in the structuring of transactions with domestic

financial institutions, that is the cashing of corporate checks as listed below:

| Count | On or about date | Financial Transaction |
|-------|------------------|------------------------|
| 10 | 8/25/2003 | Check in the approximate amount of $9,975, drawn on a G&S Medical bank account at First Union Bank, made payable to Medical Management Support Group, cashed at Gallart Investment, Inc. |
| 11 | 8/26/2003 | Check in the approximate amount of $9,975, drawn on a G&S Medical bank account at First Union Bank, made payable to Medical Management Support Group, cashed at Gallart Investment, Inc. |
| 12 | 8/26/2003 | Check in the approximate amount of $9,975, drawn on a G&S Medical bank account at First Union Bank, made payable to Medical Scripts, cashed at Gallart Investment, Inc. |

In violation of Title 31, United States Code, Section 5324(a)(3) and Title 18, United States

Code, Section 2.

### CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

1.       The allegations contained in Counts 1 through 12 of this Indictment are realleged and

incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the

United States of America of certain property in which, **JUAN CARLOS CASTANEDA, DILCIA**

**MARINEZ,** and **LUIS FRIAS** have an interest in pursuant to the provisions of Title 18, United

States Code, Sections 982(a)(1) and 982(a)(7).

13

2.      Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of **JUAN CARLOS CASTANEDA, DILCIA MARINEZ,** and **LUIS FRIAS** for any of the health care fraud offenses charged in Counts 1 and 2 of this Indictment, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the health care fraud offenses. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount derived from such offense.

3.      Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of **JUAN CARLOS CASTANEDA, DILCIA MARINEZ,** and **LUIS FRIAS**, for the money laundering offenses charged in Counts 3-9 of this Indictment the defendants shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount of property involved in such an offense.

4.      If the property described above as being subject to forfeiture, as a result of any act or omission of **JUAN CARLOS CASTANEDA, DILCIA MARINEZ,** and **LUIS FRIAS**:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as made applicable through Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of **JUAN CARLOS CASTANEDA, DILCIA MARINEZ,** and **LUIS FRIAS** up to the value of the above forfeitable property.

14

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

R/ ALEXANDER ACOSTA
UNITED STATES ATTORNEY

KIRK OGROSKY
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

JOHN K. NEAL
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

JUAN CARLOS CASTANEDA,
DILCIA MARINEZ,
and
LUIS FRIAS,

Defendants.
_____/

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

New Defendant(s)          Yes _____   No _____
Number of New Defendants   _____
Total number of counts     _____

**Court Division**: (Select One)

_X_ Miami   ____ Key West
____ FTL    ____ WPB     ____ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:  (Yes or No)  Yes
   List language and/or dialect   Spanish

4. This case will take ___10___ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)          (Check only one)

   I    0 to 5 days    _____       Petty    _____
   II   6 to 10 days   _X_         Minor    _____
   III  11 to 20 days  _____       Misdem.  _____
   IV   21 to 60 days  _____       Felony   _X_
   V    61 days and over _____

6. Has this case been previously filed in this District Court? (Yes or No)  No
   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?  (Yes or No)  No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____   District of _____

   Is this a potential death penalty case? (Yes or No)  No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?  _____ Yes  _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?  _____ Yes  _X_ No

JOHN K. NEAL, TRIAL ATTORNEY, DOJ
Court No. A5501206

*Penalty Sheet(s) attached

REV 4/8/08

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: JUAN CARLOS CASTANEDA

**Case No**:

**Count #: 1**

Conspiracy to Defraud the United States, to Cause the Submission of False Claims, and to Pay Health Care Kickbacks

18 U.S.C. § 371

**\* Max.Penalty**: 5 years' imprisonment

**Count #: 2**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\*Max. Penalty:** 10 years' imprisonment

**Count #: 3**

Money Laundering Conspiracy

18 U.S.C. §1956(h)

**\*Max. Penalty:** 20 years' imprisonment

**Counts #: 6-7**

Money Laundering

18 U.S.C. § 1956(a)(1)(B)(i)

**\*Max. Penalty:** 20 years' imprisonment as to each count

**Counts #: 10-12**

Structuring

31 U.S.C. § 5324(a)(3)

**\*Max. Penalty:** 5 years' imprisonment as to each count

**Count #:**

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   DILCIA MARINEZ

**Case No:**

**Count #:  1**

Conspiracy to Defraud the United States, to Cause the Submission of False Claims, and to Pay Health Care Kickbacks

18 U.S.C. § 371

**\* Max.Penalty:**   5 years' imprisonment

**Count #:  2**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\*Max. Penalty:**   10 years' imprisonment

**Count #:  3**

Money Laundering Conspiracy

18 U.S.C. §1956(h)

**\*Max. Penalty:**   20 years' imprisonment

**Count  #:  5**

Money Laundering

18 U.S.C. § 1957

**\*Max. Penalty:**   10 years' imprisonment

**Counts #:  6-9**

Money Laundering

18 U.S.C. § 1956(a)(1)(B)(i)

**\*Max. Penalty:**   20 years' imprisonment as to each count

**Count s #:  10-12**

Structuring

31 U.S.C. § 5324(a)(3)

**\*Max. Penalty:**   5 years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: LUIS FRIAS

**Case No**:

**Count #: 1**

Conspiracy to Defraud the United States, to Cause the Submission of False Claims, and to Pay Health Care Kickbacks

18 U.S.C. § 371

**\* Max.Penalty**: 5 years' imprisonment

**Count #: 2**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\*Max. Penalty**: 10 years' imprisonment

**Count #: 3**

Money Laundering Conspiracy

18 U.S.C. §1956(h)

**\*Max. Penalty**: 20 years' imprisonment

**Count #: 4**

Money Laundering

18 U.S.C. § 1957

**\*Max. Penalty**: 10 years' imprisonment

**Counts #: 8-9**

Money Laundering

18 U.S.C. § 1956(a)(1)(B)(i)

**\*Max. Penalty**: 20 years' imprisonment as to each count

**Count #:**

**\*Max. Penalty**:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**